UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AT LAW GROUP, PLLC,

                    Plaintiff,                        Case No. 19-13757

v.                                        Paul D. Borman
                                              United States District Judge

ALLSTATE INSURANCE COMPANY,
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY, ALLSTATE
PROPERTY AND CASUALTY INSURANCE
COMPANY, ESURANCE INSURANCE
COMPANY, ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,
MERCYLAND HEALTH SERVICES, PLLC,
and VELOCITY MRS-FUND IV, LLC,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CROSSCLAIM DEFENDANT VELOCITY MRS FUND IV, LLC'S MOTION FOR PARTIAL DISMISSAL OF ALLSTATE'S CROSSCLAIM AND TO LIMIT THE SCOPE OF ALL COUNTS WITHIN ALLSTATE'S CROSSCLAIM TO THE PROCEEDS DEPOSITED BY AT LAW GROUP, PLLC (ECF NO. 23)

This is an interpleader action commenced by Plaintiff AT Law Group, PLLC

("AT Law") pursuant to 28 U.S.C. § 1335. The defendants are Allstate Insurance

Company, Allstate Fire and Casualty Insurance Company, Allstate Property and

Casualty Insurance Company, Esurance Insurance Company, and Esurance Property

and Casualty Insurance Company (collectively "Allstate"), Mercyland Health

Services, PLLC ("Mercyland"), and Velocity MRS Fund IV, LLC ("Velocity"). Defendants Allstate and Velocity have each filed an answer to the interpleader complaint, and each have also filed a crossclaim against the other.   Now before the Court is Velocity's Motion for Partial Dismissal of Allstate's Crossclaim and to Limit the Scope of All Counts to Proceeds Deposited by AT Law Group, PLLC (ECF No. 23).  Allstate has responded to this motion (ECF No. 30) and Velocity has replied (ECF No. 32).  The motion is fully briefed and ready for resolution by the Court.   The Court finds that the briefing adequately addresses the issues in contention and dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2).  For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART the motion for partial dismissal.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.    Procedural Background**

**1.    Allstate Lawsuit, Case No. 18-13336**

On October 25, 2018, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (collectively "Allstate") filed their Complaint against 18 defendants, including Mercyland Health Services, PLLC ("Mercyland") and Mohammed Ali Abraham, M.D., a/k/a Mohammed Ali Ibrahim ("Abraham").   (Case No. 18-13336, ECF No.

2

1, Complaint.)  Allstate alleges the existence of a well-organized and complex fraudulent scheme whereby the defendant medical providers submitted false and fraudulent medical records, bills, and invoices to Allstate seeking reimbursement under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq.*, for medical treatment and services that were not actually provided, were medically unnecessary, were not lawfully rendered, and were charged at unreasonable rates. (*Id.*)  Allstate asserts claims for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) and (d), common law fraud, civil conspiracy, payment under mistake of fact, unjust enrichment, and declaratory relief. (*Id.*)

The Allstate Complaint alleges that when defendants, including Mercyland, were unable to procure payment from insurers, including Allstate and others, they sold their accounts receivable to third parties, including HMRF Fund III, LLC (which Defendant Velocity MRS Fund IV, LLC in this case refers to as its "predecessor in interest"), for a fraction of the amount billed to insurers.  (*Id.*.)

Allstate and Mercyland/Abraham entered into a Confidential Settlement Agreement to resolve Allstate's allegations in the Complaint against Mercyland and Abraham only.  (Case No. 18-13336, ECF No. 96-4, Confidential Settlement Agreement.)  Mercyland and Abraham subsequently breached that Agreement and, on October 22, 2019, this Court granted Allstate's motion for entry of judgment

against Mercyland and Abraham and entered an Agreed Judgment against Mercyland and Abraham in the amount of $250,000, plus reasonable costs and attorney's fees.  (Case No. 18-13336, ECF No. 132, Opinion and Order, and ECF No. 133, Consent Judgment.)

In its effort to collect on that Consent Judgment, on October 24, 2019, Allstate served a Request and Writ for Garnishment on AT Law Group, PLLC.  (Case No. 18-13336, ECF No. 161.)  On November 19, 2019, AT Law Group, PLLC served its garnishee disclosure, reflecting that it "is not indebted to the defendant [Mercyland] and does not possess or control the defendant's property, money, etc." because "account receivables were sold to Velocity."  (Case No. 18-13336, ECF No. 168.)

## 2.      Present Lawsuit, Case No. 19-13757

On December 23, 2019, Plaintiff AT Law Group, PLLC ("AT Law") filed its Complaint for Interpleader Pursuant to 28 U.S.C. § 1335 against defendants Allstate, Mercyland and Velocity.  (ECF No. 1.)  The Court struck that Complaint for failure to comply with E.D. Mich. L.R. 5.1(a)(3) (ECF No. 5), and on January 9, 2020, Plaintiff AT Law filed an Amended Complaint conforming to the Local Rules.  (ECF No. 6, AT Law Interpleader Complaint.)

According to that Interpleader Complaint, Mercyland "performed various medical treatment for their patients … arising from injuries sustained in motor vehicle accidents," and those patients, after becoming "indebted" to Mercyland "for

payment of those incurred medical expenses," "elected their ability to assign …

benefits to" Mercyland.  (*Id.* ¶¶ 35-38.)  Mercyland subsequently sold their rights

and interests to certain accounts receivable to Velocity.  (*Id.* ¶ 40.)  Plaintiff AT Law

was retained by Velocity "to pursue litigation against various insurance carriers for

possession of those insurance proceeds on a myriad of cases for various patients."

(*Id.* ¶ 42.)

Upon receipt of Allstate's Request and Writ for Garnishment in Case No. 18-

13336, AT Law responded and filed their Garnishee disclosure in that case,

"reflecting that Plaintiff is only in possession of property owned by Defendant

Velocity."  (*Id.* ¶¶ 45-46.)  AT Law states that it "has held currently in escrow various

monetary funds that exceed $500 which rightfully belong to one of the named

Defendants" in Case No. 19-13757, and that it "will continue to come into

possession of monetary funds that rightfully belong to one of the named Defendants

herein until their caseload retained to handle has been completed in its entirety, one

way or the other."  (*Id.* ¶¶ 48-49.)

Accordingly, AT Law filed a motion contemporaneously with its Interpleader

Complaint to deposit currently retained funds into the registry of the Court, as well

as "any monies obtained via settlement, trial adjudication, etc. in the pending

healthcare provider cases."  (*Id.* ¶ 50; ECF No. 2, Ex Parte Motion to Deposit Funds.)

AT Law asserts that "[t]here is clearly a dispute between all Defendants named

herein as to who [is] the proper payee of these insurance proceeds." (AT Law Interpleader Complaint, ¶ 54.)

On February 10, 2020, Magistrate Judge David R. Grand entered an Order Granting Plaintiff's Motion to Deposit Funds Into Court Registry, and ordering AT Law to deposit $105,916.24 with the Clerk of this Court within 21 days of the Order. (ECF No. 19, Order.) AT Law was also "granted leave to deposit any additional funds that may or may not belong to one of the named defendants in this matter that were or are obtained by Plaintiff subsequent to December 20, 2019" "until Plaintiff has resolved all cases pertaining to Mercyland Health Services or until Plaintiff has deposited a total sum of $253,500.76, the total alleged amount specified in the writ of garnishment that precipitated Plaintiff's instant motion." (*Id.*)

### 3.    **Allstate's Cross Complaint (ECF No. 13)**

On January 27, 2020, Allstate filed its Answer to AT Law's Interpleader Complaint, with affirmative defenses and crossclaim (ECF No. 11, Allstate Answer), and on January 30, 2020, Allstate filed a Crossclaim Against Co-Defendants Mercyland and Velocity. (ECF No. 13, Allstate Crossclaim.)

In its crossclaim, Allstate alleges that Mercyland sold and assigned its accounts receivable to Velocity specifically to avoid Allstate's claims of fraudulent claims submissions. (*Id.* ¶¶ 3, 5, 8, 32-38, 42.) Specifically, Allstate alleges that on November 20, 2018, a month after Allstate filed the RICO action against Mercyland

and others, Mercyland and Velocity entered into a contract whereby Mercyland purported to assign and sell its right to seek certain payments from automobile insurers (hereinafter, "accounts receivable"), including Allstate, to crossclaim defendant Velocity for 23.5% of the amounts charged to such insurers. (*Id.* ¶¶ 3, 34, and Exhibit A, Contract between Velocity and Mercyland.) Allstate additionally claims that Mercyland also sold certain of its accounts receivables to an entity called HMR Funding, LLC ("HMRF"), and that HRMF and Velocity share a Chief Executive Officer, Mark G. Guedri, but otherwise maintain separate legal identities. (*Id.* ¶¶ 39-40.) Allstate asserts "[u]pon information and belief" that "some or all of the money held by AT Law was obtained from claims that were purportedly assigned and/or sold by Mercyland to HMRF and its associated entities, and were subsequently purportedly acquired by Velocity." (*Id.* ¶ 41.)

Allstate claims that Mercyland's account receivables were its only significant asset and that "Velocity was aware that Allstate had filed an action against Mercyland … at the time it entered into the agreement with Mercyland …." (*Id.* ¶¶ 4-5.) According to Allstate, "[a]t all relevant times, Velocity was or should have been aware that the accounts receivable it obtained from Mercyland, both directly and indirectly, were created by Mercyland through fraudulent claims submissions and transferred by Mercyland to avoid Allstate's claims against Mercyland." (*Id.* ¶ 8.) Allstate asserts that Velocity "regularly visited the building" in which Mercyland

7

operated and "also conducted a review of Mercyland's billing and medical records before contracting with Mercyland, and therefore had direct knowledge of Mercyland's fraudulent claims, including claims for services that were not actually performed, claims for medical treatment that was unreasonable and unnecessary, claims for services that were fraudulently billed, and claims for services that were billed at unreasonable rates."  (*Id.* ¶¶ 37-38.)

Allstate claims that "[t]he only assets possessed by Mercyland at the time Allstate's RICO action was filed were the accounts receivable, including those that were purportedly transferred to Velocity for a fraction of their face value of the bills submitted by Mercyland to insurers" and thus "Mercyland transferred substantially all of its assets to Velocity, and Velocity knowingly accepted Mercyland's assets despite its knowledge of Allstate's RICO action against Mercyland, in order to prevent Allstate from collecting the more than $2.8 million alleged as damages by its RICO action."  (*Id.* ¶¶ 11-12.)

Allstate alleges that "Velocity and Mercyland intentionally concealed from Allstate that fact of the purported transfer of accounts receivable, as Mercyland continued to file lawsuits against Allstate subsequent to the purported transfers in its own name that did not disclose the existence of any interest by Velocity."  (*Id.* ¶ 46.) "Velocity is not identified as a party in interest in any lawsuit where Mercyland is the named plaintiff" and "Mercyland also accepted checks from Allstate and other

insurers to resolve claims for benefits that were purportedly assigned and/or sold to Velocity that were made out only to Mercyland, including checks that created the funds currently held by AT Law that are the subject of AT Law's Complaint for Interpleader."   (*Id.* ¶¶ 47-48.)   According to Allstate, "Mercyland repeatedly represented in such litigation that the full amounts billed to insurers for alleged healthcare services were its reasonable and customary charge amounts."  (*Id.* ¶ 50.) "Shortly after Mercyland purported to assign its accounts receivables to Velocity for a small fraction of the amount billed to insurers, Mercyland ceased operations."  (*Id.* ¶ 51; *id.* ¶ 52 (asserting that "Mercyland is insolvent, as it has no assets and no money in any of [its] business accounts").)

Allstate thus brought six crossclaims against Velocity and Mercyland for: (1) Count I: Avoidance of Voidable Transfer, in violation of the Michigan Uniform Voidable Transactions Act, Mich. Comp. Laws § 566.34(1)(a); (2) Count II: Avoidance of Voidable Transfer, in violation of Michigan Uniform Voidable Transactions Act, Mich. Comp. Laws § 566.34(1)(b); (3) Count III: Avoidance of Voidable Transfer, in violation of the Michigan Uniform Voidable Transactions Act, Mich. Comp. Laws § 566.35(1); (4) Count IV: Equitable Subordination; (5) Count V: Unjust Enrichment; and (6) Count VI: Declaratory Relief Pursuant to 28 U.S.C. § 2201.  (*Id.* ¶¶ 54-110, PgID 153-63.)

Allstate seeks an award of "the value of all such assets transferred by Mercyland to Velocity up to the full amount of its judgment (including costs and attorney's fees) against Mercyland," "its actual and consequential damages," an "ORDER that any claim by Velocity against the property held by AT Law that is the subject of AT Law's Complaint for Interpleader is equitably subordinated to Allstate's claims," and a declaration pursuant to 28 U.S.C. § 2201 that Mercyland and Velocity have no right to any of the property held by interpleader AT Law Group, PLLC and any purported transfer of accounts from Mercyland to Velocity is void.  (*Id.* PgID 163-65.)

### 4.     Velocity's Crossclaim (ECF No. 22)

On February 13, 2020, Velocity filed its Answer to AT Law's Interpleader Complaint, with affirmative defenses and crossclaim (ECF No. 21), and on February 28, 2020, Velocity filed is Answer with Affirmative Defenses to Allstate's Crossclaim.  (ECF No. 24.)

On February 18, 2020, Velocity filed a Crossclaim against Allstate and Mercyland.  (ECF No. 22, Velocity Crossclaim.)  Velocity asserts that Allstate wrongfully attempts to enforce the October 22, 2019 Consent Judgment upon them, as an "unrelated party to such action," and that they "purchased the underlying healthcare receivables that gave rise to the Proceeds **pursuant to a July 27, 2017** Lien and Receivables Portfolio Purchase and Assignment Agreement ("2017

LRPA") that was executed **over one year prior to Allstate et al.'s October 25, 2018** lawsuit against" Mercyland.  (*Id.* ¶¶ 1-2 (emphasis in original).)  According to Velocity, the 2017 LRPA and associated purchase orders were subsequently assigned to Velocity on March 23, 2018.  (*Id.* ¶ 36.)

Velocity asserts that the receivables "were purchased in good faith and for reasonably equivalent value after non-party HMR Funding, LLC, … engaged in due diligence and did not report any suspicion of fraudulent conduct to Velocity," and that "[b]ased upon information and belief, none of the Proceeds [held by Velocity's counsel, AT Law Group, PLLC] were paid by Allstate" but instead "were paid by other insurers who—to Velocity's knowledge—have not alleged any wrongdoing by Mercyland and who have released any claims related to the Proceeds." (*Id.* ¶¶ 3-6.)

Velocity asserts that it "began purchasing healthcare receivables from Mercyland in good faith, for reasonably equivalent value, and over one year before Allstate et al filed its October 25, 2018 lawsuit," and claims that Allstate therefore has no interest in the Proceeds, and that even if they do, Velocity's interest is superior to theirs.  (*Id.* ¶¶ 7-9.)

Velocity retained AT Law to pursue the collection of certain accounts receivable that Velocity purchased from Mercyland.  (*Id.* ¶ 64.)  The lawsuits were brought in the name of Mercyland as the Assignee of the non-party patients' rights to pursue insurance proceeds against no-fault insurance companies.  (*Id.* ¶ 65.)  As

a result of this retention, AT Law came into possession of the proceeds at stake in this litigation.  (*Id.* ¶¶ 64-65.)  According to Velocity, Allstate is not the source of any of the funds that make up the proceeds at stake in this interpleader action.  (*Id.* ¶¶ 58-59; *see also* Velocity Mot. at pp. 6, 9, PgID 385, 388, citing Ex. 26 to Allstate Complaint in Case No. 18-13336, ECF No. 1-27, Allstate's Mercyland Damages Chart.)

Velocity thus seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that: (a) Velocity's interest in the Proceeds is superior to any interest that Allstate may have in the Proceeds; (b) Allstate has no interest in the Proceeds because those proceeds rightfully belong to Velocity; (c) any agreement between Allstate and Mercyland does not bind or otherwise limit Velocity; (d) enjoin Allstate from seeking to enforce its 2019 judgment, or otherwise seek garnishment from, Velocity; (e) enjoin Allstate from garnishing AT Law Group, PLLC or any other counsel or servicing partner retained by Velocity to collect on Velocity's receivables; (f) quash any garnishments that conflict with Velocity's request for declaratory judgment; (g) order Allstate to pay Velocity's attorneys' fees so wrongfully incurred; and (h) provide any other relief pursuant to law or equity the Court deems appropriate.  (*Id.* ¶ 10.)

**B.     Cross Defendant Velocity's Motion for Partial Dismissal of Allstate Crossclaim (ECF No. 23)**

On February 28, 2020, Cross Defendant Velocity filed a Motion for Partial Dismissal of Allstate's Cross-Claim and to Appropriately Limit the Scope of All Counts Within Allstate's Cross Claim to the Proceeds Deposited by AT Law Group, PLLC.  (ECF No. 23, Velocity Mot.)  Velocity asserts that the money held by AT Law (and subject to this interpleader action) rightfully belongs to it, as the owner of the receivables that gave rise to the money held by AT Law and as a perfected, secured creditor of Mercyland.  Velocity argues that: (1) Allstate has failed to state a claim for Equitable Subordination (Count IV) as a matter of law because equitable subordination does not apply outside of a bankruptcy proceeding; (2) the Court should dismiss Allstate's claim for unjust enrichment (Count V) because, under Michigan law, the remedy for unjust enrichment is restitution of the benefit obtained *from the complainant*, and here none of the proceeds at stake were paid by Allstate and thus Velocity has not received any benefit from Allstate; and (3) the Court should hold that the scope of this interpleader action is limited to the adjudication of rights as to the specific proceeds held by AT Law and the specific receivables that gave rise to those proceeds.  (*Id.*)

On March 13, 2020, Allstate filed a response in opposition to Velocity's motion for partial dismissal.  (ECF No. 30, Allstate Resp.)  Allstate asserts that its crossclaims "relate to contracts that Velocity and its related entities entered over a

period of nearly three years through which they provided liquidity and critical funding to allow co-defendant Mercyland … to continue its comprehensive scheme to defraud automobile insurers in Michigan." (*Id.* at p. 1, PgID 520.)  Allstate argues that the scope and subject matter of its crossclaims are proper, as Fed. R. Civ. P. 13(g) authorizes a party to "state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that it the subject matter of the original action."  Allstate also argues that it asserts a valid claim for unjust enrichment because is alleges that Velocity knowingly received payments that Allstate made to Mercyland as a result of Mercyland's fraudulent misrepresentations, and these allegations must be accepted as true for purposes of Rule 12(b)(6).  Finally, Allstate argues that it has stated a valid claim for equitable subordination under Michigan law, and just because a common law concept was used to model a bankruptcy statute does not mean that it ceases to be applicable in other contexts.

On April 2, 2020, Velocity filed a reply brief in support of its motion.  (ECF No. 32, Velocity Reply.)  Velocity argues that Allstate's equitable subordination claim is untenable as the Sixth Circuit has expressly held that the doctrine of equitable subordination "only applied, however, in bankruptcy proceedings," citing *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, 311 F. App'x 814, 817 (6th Cir, 2009).  Velocity argues that the scope of Allstate's claims are beyond the bounds of Rule

13(g), and that Allstate asks this Court to adjudicate rights to different receivables than those giving rise to the insurance proceeds in the possession of AT Law, and the Court should narrow the scope of Allstate's crossclaim to the specific receivables related to AT Law.  Finally, Velocity argues that Allstate has failed to state a claim for unjust enrichment because it is undisputed that Allstate stopped making payments on Mercyland's claims after it filed its RICO case on October 25, 2018, and thus none of the funds at issue could have arisen from Allstate.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).  To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference."

*Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has explained that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If

16

referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).  Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings.  *QQC, Inc. v. Hewlett-Packard Co*., 258 F.Supp.2d 718, 721 (E.D. Mich. 2003).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document."  *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

## III.  ANALYSIS

### A.    Count IV – Equitable Subordination

Count IV of Allstate's Cross-Complaint asserts that Velocity's interest should be equitably subordinated to Allstate's interest.  (ECF No. 13, Allstate Crossclaim, ¶¶ 83-92.)  Specifically, Allstate alleges that "Velocity was aware that Mercyland and its co-conspirators submitted fraudulent bills to Allstate and other insurers, as

17

Velocity was provided with copies of all medical bills and records submitted by Mercyland and was aware of Mercyland's practices, including billing for services not rendered, billing for medically unnecessary services, and billing for unlawful services." (*Id.* ¶ 85.) Allstate claims that Velocity's acquisition of Mercyland's accounts receivable that it knew were generated through fraudulent insurance claims was inequitable conduct, and that "Velocity's claims to property held by AT Law must be equitably subordinated to Allstate's due to Velocity's inequitable conduct." (*Id.* ¶¶ 86-92.)

Velocity asserts that this claim "is wholly devoid of merit in this case and should be dismissed" because that doctrine applies only in the bankruptcy context. (Velocity Mot. at p. 8, PgID 387.) Specifically, Velocity cites to *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, No. 5:07CV02023, 2008 WL 5705709 (N.D. Ohio Mar. 10, 2008), *aff'd*, 311 F. App'x 814 (6th Cir. 2009), in which the district court stated: "Equitable subordination is a bankruptcy-specific concept, and its application is limited to that context." (*Id.*, citing *Gaymar*, 2008 WL 5705709, at *3.) When affirming that decision, the Sixth Circuit held:

> Gaymar next contends that the court improperly dismissed its claim for equitable subordination. That doctrine only applies, however, in bankruptcy proceedings. *See Gaff v FDIC*, 919 F.2d 384, 393 (6th Cir. 1990) ("[P]rinciples of equitable subordination do not apply to [a] case [where the] case is not in bankruptcy."). Thus, the district court properly dismissed this claim.

18

*Gaymar*, 311 F. App'x at 817 (Kethledge, J.) Because this interpleader action is not a bankruptcy proceeding, Velocity argues that Count IV of Allstate's Crossclaim should be dismissed. (Velocity Mot. at p. 8, PgID 387.)

Allstate argues in response that Velocity's reliance on the *Gaymar* decision, a decision from the Northern District of Ohio, is misplaced because "[t]his Court, sitting in Michigan and exercising diversity jurisdiction with respect to the instant cross-claim, must apply Michigan law, which unquestionably authorizes this Court to grant the requested equitable relief." (Allstate Resp. at pp. 15-16, PgID 534-35, citing *Countrywide Home Loans v. Peoples Choice Home Loan*, No. 298399, 2011 Mich. App. LEXIS 2164, *20-*21 (Dec. 6, 2011) (granting plaintiff "an equitable mortgage with priority over the other mortgage lenders," using "the broad and flexible jurisdiction of courts of equity to afford remedial relief, where justice and good conscience so dictate").) Allstate also relies on a Massachusetts District Court case, *Lawlor Corp. v. Federal Deposit Ins.*, 848 F. Supp. 1069, 1072-73 (D. Mass. 1994), in which the court found the plaintiff could proceed on a claim based on the common law doctrine of equitable subrogation under Massachusetts law that allowed courts to fashion an equitable remedy "to prevent unjust enrichment." Allstate asserts that "[j]ust because a common law concept was used to model a bankruptcy statutes [sic] does not mean that it ceases to be applicable in other contexts." (*Id.* at pp. 16-17, PgID 535-36.) Allstate contends that the Court "should

19

exercise its equitable powers to subordinate any claims Velocity has to funds derived from Mercyland's accounts receivable to Allstate's claims and judgment." (*Id.* at p. 17, PgID 536.)

The United States Supreme Court affirmed the doctrine of equitable subordination in *Pepper v. Litton*, 308 U.S. 295, 310-12 (1939), noting the equitable power of the Bankruptcy Court to protect creditors against fraud and breach of fiduciary duty by debtors. The court noted that the Bankruptcy Court may subordinate a claim of an individual to another's, in light of equitable considerations. *Id.* at 305. This doctrine has been codified at 11 U.S.C. § 510(c)(1), and "[g]enerally speaking, the concept allows courts to re-order the priority of claims to funds of a bankruptcy estate based on the equities of the situation." *Gaymar*, 2008 WL 5705709, at *3.

As Velocity correctly states, the Sixth Circuit unambiguously held that the doctrine of equitable subordination "only applies … in bankruptcy proceedings," and thus affirmed dismissal of a plaintiff/manufacturer's claim of equitable subordination that did not arise in the bankruptcy context. *Gaymar*, 311 F. App'x at 817. Allstate instead relies on two cases – *Countrywide Home Loans* and *Lawlor*.

The Michigan Court of Appeals applied an equitable doctrine in *Countrywide Home Loans* – there the "equitable mortgages" doctrine – which applies "when the parties intend by a written agreement to create a lien on real estate for the payment

20

of a debt but the writing is legally defective." *Countrywide Home Loans*, 2011 WL 6118597, at *8 (citing *Abbot v. Godfroy's Heirs*, 1, Mich. 178, 181 (1849)). The *Countrywide* court applied the equitable mortgage doctrine in that case because "[t]he loan agreement and mortgage both identify the subject [real] property and show an intention that the property will serve as security for the loan, essential elements of an equitable mortgage." *Id.* (concluding that "[e]ven though the mortgage conveyed to Countrywide is defective, an equitable mortgage arises"). As Velocity correctly points out in its reply brief, "[t]he case at bar does not involve mortgages or written loan agreements between Velocity and Allstate: this case does not even involve real estate," and thus the equitable mortgage doctrine is inapplicable to this case. (Velocity Reply at p. 3, PgID 574.)

The Massachusetts District Court in *Lawlor Corp. v. Federal Deposit Ins. Corp.*, 848 F. Supp. 1069 (D. Mass. 1994) held that a construction contractor could pursue a claim for equitable subrogation against the FDIC where the contractor had produced evidence of a scheme by bank officers to defeat its mechanic's lien on property mortgaged to a failed bank now in FDIC receivership. *Id.* at 1072-73. The Court noted that the Massachusetts Supreme Judicial Court defined "subrogation" as "'the substitution of one person in place of another, whether as a creditor, or the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or

securities,'" *id.* at 1072 (quoting *Provident Co-op Bank v. James Talcott, Inc.*, 358 Mass. 180, 188 (1970)), and found that "[e]quitable subrogation is a well-established doctrine in Massachusetts law" "to prevent unjust enrichment by equitably adjusting record title in the absence of any agreement between the parties." *Id.* That decision, applying Massachusetts law, is not controlling.

The Court finds that because of the unpublished Sixth Circuit decision in *Gaymar*, it is prevented from applying the doctrine of equitable subordination in this case, which is outside of the bankruptcy context. Accordingly, Velocity's motion to dismiss Count IV, Equitable Subordination, is granted.[1]

---

[11] DUBITANTE (doubting).

   *Gaymar Industries, Inc. v. FirstMerit Bank*, 311 F. App'x 814 (6th Cir. 2009) is an unpublished and therefore non-precedential decision. *Gaymar* concluded that the equitable subordination "doctrine only applies, however, in bankruptcy proceedings. *See Gaff v. FDIC*, 919 F.2d 384, 393 (6th Cir. 1990) ("[P]rinciples of equitable subordination do not apply to [a] case [where the] case is not in bankruptcy.")." *Id.* at 817. However, in *Gaff*, a published decision, the Sixth Circuit did apply the principles of equitable subordination to a non-bankruptcy case: "We recognize that the principles of equitable subordination do not apply to this case directly. This case is not in bankruptcy and the bankruptcy code does not govern bank failures." *Gaff*, 919 F.2d at 393. Nevertheless, *Gaff* applied the principles of equitable subordination.

   While the instant case is not in bankruptcy, this Court would conclude that the Bankruptcy Code subordination provision, 11 U.S.C. § 510(c)(1), does not <u>prevent</u> the application of the equitable subordination doctrine in this Michigan diversity jurisdiction case. *Gaymar* applied Ohio law. The long-standing equitable subordination doctrine is not specifically, or even impliedly, preempted by section 510(c)(1) or its legislative history.

   Section 510(c)(1) of the Bankruptcy Code speaks about "principles of equitable subordination," i.e. principles that existed prior to its enactment. The accompanying Revision Notes and Legislative Reports state:

## B.   Count V – Unjust Enrichment

Count V of Allstate's Cross-Complaint claims that Allstate has been harmed and that Velocity will be unjustly enriched by keeping monies that Velocity received from Mercyland as a result of payments made by Allstate.  (Allstate Crossclaim ¶¶ 93-99.)  Specifically, Allstate alleges that it "paid money to Mercyland under the reasonable belief that it was legally obligated to make such payments on Mercyland's fraudulent misrepresentations," but that "Velocity was aware that Mercyland and its co-conspirators submitted fraudulent bills to Allstate and that any payments made by Allstate to Mercyland were induced by and a result of such fraudulent submissions."  (*Id.* ¶¶ 94-95.)  Allstate asserts that "[s]ome or all of the payments made by Allstate in response to Mercyland's fraudulent submissions were

_____

1978 Acts. "Any subordination ordered under this provision must be based on principles of equitable subordination … defined by case law … under the judicial doctrine of equitable subordination."

1984 Acts.  **Legislative statements** "It is intended that the term 'principles of equitable subordination' follow existing case law and leave to the courts development of this principle."

These statements clearly do not indicate an intent to displace the long-standing history of applying equitable subordination principles outside of the bankruptcy context.

"Presumption Against Federal Preemption: A federal statute is presumed to supplement rather than displace state law." Scalia & Garner, Reading Law: The Interpretation of Legal Texts, p. 290 (2012).  This Court would apply the principle of equitable subordination, under Michigan law as requested by Allstate, were it not for the Sixth Circuit's unpublished *Gaymar* decision.

conveyed to Velocity" and thus "Velocity wrongfully obtained payments from Allstate through the fraudulent submissions made by Mercyland." (*Id.* ¶¶ 96-97.) Allstate alleges that "Velocity has been unjustly enriched by receipt of these wrongfully obtained payments from Allstate" and that "Velocity's retention of these payments would violate fundamental principles of justice, equity and good conscience." (*Id.* ¶¶ 98-99.)

Velocity argues that Allstate's unjust enrichment claim should be dismissed because it claims that none of the proceeds at issue in this case were paid by Allstate. (Velocity Mot. at p. 9, PgID 388.)  According to Velocity, to establish a claim of unjust enrichment, Allstate must establish two elements: (1) the receipt of a benefit by Velocity from Allstate and (2) an inequity resulting to Allstate because of the retention of the benefit by the other party. (*Id.*, citing *Karaus v Bank of New York Mellon*, 300 Mich. App. 9, 23 (2012).)  Velocity also contends that the remedy for unjust enrichment is restitution, *Wright v. Genesee Cty.*, 504 Mich. 410, 418 (2019), and thus Allstate's request for "actual and consequential damages in an amount to be determined at trial" for this claim is without merit.  (Velocity Mot. at p. 9 & n.1, PgID 388.)

Allstate argues in response that "Velocity's bald declaration that 'Allstate did not pay **<u>any</u>** of the proceeds at stake in this interpleader action'" is "entirely without merit" because "whether Allstate paid any of the proceeds at stake in the interpleader

24

action obviously is a disputed question of fact and therefore not subject to resolution through a Fed. R. Civ. P. 12(b)(6) motion," and "since Allstate's cross-claim is not limited to the funds held by AT Law, Velocity's assertion, even if accurate, does not establish a basis for dismissal of this count."  (Allstate Resp. at p. 14, PgID 533 (emphasis in original).)  Allstate claims that it has sufficiently alleged that Velocity knowingly received payments that Allstate made to Mercyland as a result of Mercyland's fraudulent misrepresentations.  (*Id.* at pp. 14-15, PgID 533-34.)

In reply, Velocity contends that it is undisputed that Allstate stopped making payments on Mercyland's claims after it filed its RICO case on October 25, 2018, citing Exhibit 26 to Allstate's Complaint in Case No. 18-13336, and thus "none of the funds in this case could have arisen from Allstate." (Velocity Reply at p. 7, PgID 578.)  Velocity continues that even if those receivables are at issue here, "then Allstate's unjust enrichment claim should be limited to no more than the amount of monies paid by Allstate to Mercyland, pursuant to Allstate's own admission in Exhibit 26[.]" (*Id.*)

Under Michigan law, "[u]njust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another." *Tkachik v. Mandeville*, 487 Mich. 38, 48 (2010) (citation omitted).  A plaintiff alleging unjust enrichment must establish two elements: "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of

the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003).  Here, Allstate alleges that "Mercyland also accepted checks from Allstate and other insurers to resolve claims for benefits that were purportedly assigned and/or sold to Velocity that were made out only to Mercyland, including checks that created the funds currently held by AT Law that are the subject of AT Law's Complaint for Interpleader." (Allstate Cross Complaint, ¶¶ 47-48.)  Allstate also alleges that Velocity knowingly received payments that Allstate made to Mercyland and that Velocity thus was unjustly enriched by receipt of those wrongfully obtained payments from Allstate to Mercyland.  (*Id.* ¶¶ 95-98.)

Taking these allegations as true, as the Court must on a motion to dismiss, the Court finds that Allstate has sufficiently alleged a claim for unjust enrichment to survive this motion to dismiss. Whether Allstate can ultimately establish that Velocity received a benefit *from Allstate* (that Allstate paid any of the proceeds at stake in this interpleader action) is better resolved on summary judgment. Accordingly, Velocity's motion to dismiss Count V, Unjust Enrichment, is denied.

**C.     Whether Allstate's Cross-Claim Should be Limited to the Proceeds at Stake in this Interpleader Action**

Velocity argues that an interpleader action, such as this one, "is concerned with 'the existence of actual or potential conflicting claims **to a limited fund or property held by the stakeholder**.' *Lindenberg v. Jackson National Life Ins. Co.*, 912 F.3d 348, 356 (6th Cir. 2018) (emphasis added)." (Velocity Mot. at p. 10, PgID

389.)  "Once the Court asserts jurisdiction over the dispute, it then 'determines the respective rights of the claimants **to the fund or property at stake** via normal litigation processes, including pleading, discovery, motions, and trial." (*Id.*, quoting *Lindenberg*, 912 F.3d at 356 (emphasis added).)  Velocity contends that "any claims raised by the parties must be limited to the specific funds or property at issue," but that Allstate's Crossclaim involves property and funds that have never been held by AT Law Group, PLLC, but expressly includes *all purchases* of accounts receivable between Velocity, Velocity's non-party predecessor in interest, and Mercyland, "regardless of whether those receivables related to Allstate, and regardless of whether those accounts receivable relate to the specific proceeds at issue in this interpleader action." (*Id.* at pp. 10-11, PgID 389-90.)  Velocity therefore requests that the Court issue an order that limits the scope of Allstate's crossclaims to the specific receivables that gave rise to the proceeds at issue in this interpleader. (*Id.* at p. 11, PgID 390.)

Allstate argues in response that the scope and subject matter of its crossclaim is proper because Federal Rule of Civil Procedure 13(g) authorizes a party to "state as a crossclaim any claim by one party against a coparty <u>if the claim arises out of the transaction or occurrence</u> that is the subject matter of the original action." (Allstate Resp. at pp. 8-9, PgID 527-28, quoting Fed. R. Civ. P. 13(g) (emphasis added).) According to Allstate, "'the purpose of Rule 13(g) is to have "all issues be resolved

in one action, with all parties before the court, complex though the action may be.''''"
(*Id.* quoting *Laborers Pension Trust Fund – Detroit & Vicinity v. L.V. Painting & Contracting, Inc.*, No. 16-12003, 2017 U.S. Dist. LEXIS 10635, *5 (E.D. Mich. Jan. 26, 2017), quoting *LASA Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 146 (6th Cir. 1969).)  "Rule 13(g) should be 'liberally construe[d],' and 'so long as a crossclaim is raised under the "same core of facts" as the original complaint, a court requires no further basis for jurisdiction.'"  (*Id.* at p. 9, PgID 528, quoting *USAA Life Ins. Co. v. Space*, No. 3:14-CV-0661-TBR, 2015 U.S. Dist. LEXIS 67496, *15-*16 (W.D. Ky. May 26, 2015), quoting *Alexander*, 414 F.2d at 146.)  Allstate contends that "[t]he transactions and occurrences that are related to the subject of AT Law's complaint for interpleader … are the claims that were sold and assigned to Velocity by Mercyland to obtain liquidity while avoiding being subject to Allstate's fraud claim" and that "Allstate's cross-claim simply seeks a resolution with respect to each transfer of accounts receivable by Mercyland to Velocity, not simply the transfers that have so far formed the source of funds held by AT Law."  (*Id.*)  Allstate argues that "[t]he portion of Allstate's cross-claim that Velocity seeks to dismiss – those related to Mercyland receivables that were transferred to Velocity other than those converted to insurance payments by AT Law – require resolution of the same questions."  (*Id.* at pp. 10-11, PgID 530-31.)

Federal Rule of Civil Procedure 13(g) provides:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the crossclaimant.

Fed. R. Civ. P. 13(g). As Allstate correctly asserts, the Sixth Circuit has directed that in the interest of judicial economy, courts should liberally construe Rule 13. *See Alexander*, 414 F.2d at 146 (noting that Rule 13 was "intended to avoid circuity of action and to dispose of the entire subject matters arising from one set of facts in one action, thus administering complete and evenhanded justice expeditiously and economically.") (quotations omitted). So long as a crossclaim is raised under the "same core of facts" as the original complaint, a court requires no further basis for jurisdiction. *Id.* A "logical relationship" test is the generally accepted standard for determining whether the crossclaim is properly asserted. *See id.* (citing *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991)). The Court must consider "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Sanders*, 936 F.2d at 277 (citing *Moore v. New York Cotton Exch.*, 270 U.S. 593 (1926)).

In AT Law's Interpleader Complaint, plaintiff AT Law requests that this Court adjudicate the rights of Velocity and Allstate to insurance proceeds in its possession arising from account receivables Velocity purchased from Mercyland. (AT Law Interpleader Compl.) Allstate seeks, through its crossclaim, to void the purchase transactions that gave rise to those proceeds within AT Law's possession *as well as* to additional transactions that did not give rise to those proceeds. (See Allstate Resp. at p 10, PgID 529 ("Allstate's cross-claim simply seeks a resolution with respect to each transfer of accounts receivable by Mercyland to Velocity, not simply the transfers that have so far formed the source of the funds held by AT Law.") (citing ECF No. 11, Allstate Answer and Crossclaim, ¶¶ 54-110).) Allstate asserts that "[t]he cross-claim expressly seeks to recover 'the value of all such asserts transferred by Mercyland to Velocity up to the full amount of [Allstate's] judgment against Mercyland' as all such claims are voidable as to Allstate." (*Id.* at p. 11, PgID 530, citing Allstate Answer and Crossclaim, ¶¶ 62, 72, 82).) The issue is whether these additional claims arise "out of the transaction or occurrence or … property … that is the subject matter of the original action." *See* Fed. R. Civ. P. 13(g).

Applying the logical relationship test, it appears that the essential facts that provide the bases for the Interpleader Complaint and Allstate's crossclaims against Velocity are "largely the same" and the same legal theories underlie each. As Allstate explains in its response brief, both claims arise out of the relationship

between Mercyland and Velocity that exists as a result of their various agreements relating to the purchase of accounts receivable.  The Court will be required to address Allstate's allegations that Mercyland's accounts receivable were the product of fraudulent billing, that Velocity was aware of Mercyland's fraud when it purchased its accounts receivable, that the accounts receivable were Mercyland's only significant assets, and that the transfer of the accounts receivable was intended to avoid Allstate's claims.  (See Allstate Resp. at p. 11, PgID 530.)  Thus, both the Interpleader Complaint and Allstate's crossclaims arise out of the relationship between Mercyland and Velocity and Velocity's purchase of accounts receivable, and the crossclaim appears to ask the Court to apply the same arguments and findings made as to the assignments at issue in the AT Law Interpleader Complaint to other assignments made from Mercyland to Velocity.  Allstate's crossclaims arise from the same transaction or occurrence that is the subject of the original interpleader action and involves only coparties to the interpleader action.

Velocity contends that "any claims raised by the parties must be limited to the specific fund or property at issue" in the AT Law Interpleader Complaint.  (Velocity Mot. at p. 10, PgID 389.)  However, Rule 13(g) does not limit crossclaims solely to the "specific fund or property at issue" but instead expressly provides that a crossclaim is proper "if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, *or* if the claim relates

to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g) (emphasis added).

Moreover, courts have applied this standard in interpleader actions and allowed crossclaims that did not relate solely to the specific fund or property at issue in the interpleader action, so long as the claims arise out of the same or related transaction or occurrence of the original action. *See USAA Life Ins. Co. v. Space*, No. 3:14-CV-00661-TBR, 2015 WL 3407323, at *7 (W.D. Ky. May 26, 2015) (in interpleader action to determine ownership of life insurance proceeds, allowing crossclaims for breach of duty of good faith and improper interference with a checking account and other unnamed accounts and property because "the essential facts that provide the bases for Space's claims are nearly identical, and the same legal theories underlie each" and "Space's crossclaim is sufficiently interrelated with the claims concerning the life insurance policy"); *First Tennessee Nat'l Bank v. Fed. Deposit Ins. Corp.*, 421 F. Supp. 35, 39 (E.D. Tenn. 1976) (in interpleader complaint by bank to determine ownership of certificates of deposit held as security for a real estate loan, allowing crossclaims by defendant Trustee against individual defendants for the balance of the loan, "find[ing] that this claim arose out of the same transaction that is the subject matter of the original action and is a proper cross-claim pursuant to Rule 13(g)").

The case Velocity relies on in its reply brief, *Wayne Cty. Bd. of Cty. Comm'rs v. Mendel, Inc.*, No. 5:98 CV 1795, 2000 WL 206257 (N.D. Ohio Jan. 6, 2000), is distinguishable.  In that case, the Wayne County Board of County Commissioners ("Wayne County") brought an interpleader action against Defendants Mendel, Inc., the IRS, Ohio Farmers Insurance Company ("Ohio Farmers") and All Ohio Insurance Agency, Inc., to determine which of these defendants is entitled to certain funds held by Wayne County.  *Id.* at *1.  The United States and Ohio Farmers both claimed an interest in the interplead funds, and Ohio Farmers also asserted a crossclaim against the United States, demanding, in the second count, that the United States return to it monies levied by the IRS from another municipality, Columbiana County, which was not a party to the suit.  *Id.*  The court dismissed that crossclaim, finding that even though the funds seized from Columbiana County were seized as part of the same lien that is the subject of the interpleader action by Wayne County, the factual issues were "entirely distinct" as the project in Columbiana County was not related in any way to that in Wayne County, the funds at issue are not related to the interplead funds, and the proof of the crossclaim would consist of entirely different evidence than that required in the interpleader action.  *Id.* at *2-3 (concluding that "the fact that the IRS also levied funds due to Mendel from Columbiana County is not sufficiently related to the subject matter of the original interpleader, the $10,261.51 interplead by Wayne County, to allow Ohio Farmers to

assert a cross-claim against the United States for the funds levied from Columbiana County.").

Construing Rule 13(g) liberally, as the Court must, it appears that all of Allstate's crossclaims arise from the same transaction or occurrence asserted in the original complaint – Velocity's purchase of accounts receivable from Mercyland – and involves only coparties to the interpleader action.  Therefore, the Court finds that those crossclaims are properly asserted here and denies Velocity's motion to limit the scope of Allstate's crossclaims to the proceeds deposited by AT Law.

## IV.  CONCLUSION

For the reasons state above, the Court **GRANTS IN PART and DENIES IN PART** Velocity's Motion for Partial Dismissal.  Specifically, the Court **GRANTS** Velocity's motion to dismiss Allstate's equitable subordination claim (Count IV), and **DENIES** Velocity's motion to dismiss Allstate's unjust enrichment claim (Count V) and to limit the scope of all Counts within Allstate's crossclaim to the proceeds deposited by AT Law Group, PLLC.

IT IS SO ORDERED.

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated:  May 18, 2020