UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AT LAW GROUP, PLLC,

                Plaintiff,

v.

ALLSTATE INSURANCE
COMPANY, *et al.*,

                Defendants.

_____/

Case No. 19-cv-13757

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

## OPINION AND ORDER:
## (1) ADOPTING MAGISTRATE JUDGE GRAND'S MAY 27, 2021 ORDER, CONSTRUED AS A REPORT AND RECOMMENDATION (ECF NO. 105); (2) OVERRULING DEFENDANT ALLSTATE INSURANCE COMPANY'S OBJECTIONS (ECF NO. 107); AND (3) DENYING DEFENDANT ALLSTATE'S MOTION TO ENFORCE SETTLEMENT AGREEMENT WITH DEFENDANT VELOCITY MRS FUND IV, LLC (ECF NO. 56)

On May 27, 2021, Magistrate Judge David R. Grand issued an Order, in part, denying Defendant Allstate's Motion to Enforce Settlement Agreement with Velocity. (ECF No. 105, Order.) For the reasons set forth below, this part of the Order is construed as a report and recommendation (R&R). The Allstate Defendants filed Objections to the Order/R&R which are now before this Court for resolution. (ECF No. 107, Allstate's Objections.) Defendant Velocity MRS-Fund IV, LLC filed a Response to Defendant Allstate's Objections. (ECF No. 109, Velocity's Response.) Defendant Allstate filed a reply in support of its objections (ECF No.

110, Allstate Reply), and Defendant Velocity filed, with the Court's permission, a sur-reply in opposition to Defendant Allstate's Objections (ECF No. 118, Velocity Sur-reply.) The Court, having conducted *de novo* review under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) of those portions of the R&R to which specific and timely objections have been filed, OVERRULES Defendant Allstate's Objections (ECF No. 107), ADOPTS Magistrate Judge Grand's Report and Recommendation (ECF No. 105), and DENIES Defendant Allstate's Motion to Enforce Settlement Agreement (ECF No. 56).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This is an interpleader action commenced by Plaintiff AT Law Group, PLLC (AT Law) pursuant to 28 U.S.C. § 1335. The defendants are Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (collectively "Allstate"), Mercyland Health Services, PLLC (Mercyland), and Velocity MRS Fund IV, LLC (Velocity). Defendants Allstate and Velocity have each filed an answer to the interpleader complaint, and each have also filed a crossclaim against the other.

### A.     Prior Allstate Litigation, Case No. 18-cv-13336

On October 25, 2018, Allstate filed a Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and fraud action in this Court against

2

18 defendant medical providers, including Mercyland. Case No. 18-cv-13336 (E.D. Mich.) Allstate alleges the existence of a well-organized and complex fraudulent scheme whereby the defendant medical providers submitted false and fraudulent medical records, bills, and invoices to Allstate seeking reimbursement under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., for (1) medical treatment and services that were not actually provided, (2) were medically unnecessary, (3) were not lawfully rendered, and (4) were charged at unreasonable rates. The Allstate Complaint alleges that when defendants, including Mercyland, were unable to procure payment from insurers, including Allstate and others, they sold their accounts receivable to third parties, including HMRF Fund III, LLC (which Defendant Velocity MRS Fund IV, LLC in this case refers to as its "predecessor in interest"), for a fraction of the amount billed to insurers. (Case No. 18-13336, ECF No. 1, Complaint.)

This Court entered judgment in Allstate's favor against Mercyland and its owner on October 22, 2019. (Case No. 18-13336, ECF No. 132, Opinion and Order, and ECF No. 133, Consent Judgment.) Allstate then worked to collect on the judgment, including serving a writ of garnishment on AT Law, which represented Mercyland in state court actions seeking money from insurers. (Case No. 18-13336, ECF No. 161.) AT Law served its garnishee disclosure, reflecting that it "is not indebted to the defendant [Mercyland] and does not possess or control the

3

defendant's property, money, etc." because "account receivables were sold to Velocity." (Case No. 18-13336, ECF No. 168.)

### B.     Present Interpleader Action, Case No. 19-cv-13757

AT Law subsequently filed this interpleader action to deposit currently retained funds into the registry of the Court, as well as "any monies obtained via settlement, trial adjudication, etc. in the pending healthcare provider cases." (ECF No. 6 ¶ 50; ECF No. 2, Ex Parte Motion to Deposit Funds.) Defendants Allstate and Velocity each asserted claims to the interpleaded funds, and also asserted cross-claims against one another. Defendants Allstate and Velocity engaged in mediation efforts to attempt to settle their respective claims to the interpleader funds at issue in this matter, as well as a resolution to a settlement of their respective cross-claims.

### 1.     Mediation

According to Defendants Allstate and Velocity, they both agreed to a mediation that took place on October 29, 2020 with mediator Clarence L. Pozza, Jr. The parties did not reach an agreement at that time, and their settlement discussions continued in the following days, but they still did not reach an agreed settlement. Allstate contends that the settlement discussions failed because Velocity wanted a global release of claims, to which Allstate was opposed. Allstate states that it was only interested in settling this interpleader action.

On November 2, 2020, counsel for Velocity sent counsel for Allstate an email

at approximately 1:19 p.m. stating:

> Revised Stipulation and Order attached for Allstate's review and
> consideration.
>
> In addition to executing and filing the attached with the Court, Fund IV
> and Allstate would enter into a Confidential Settlement Agreement
> pursuant to which they would split the insurance proceeds interpleaded
> by AT-Law 50/50 and Allstate would discharge its Consent Judgment
> against Mercyland upon Allstate's receipt of its 50% share of those
> insurance proceeds. Fund IV cannot be left in a position where it is
> again subject to another proceeding with Allstate involving Mercyland
> receivables.
>
> Please advise whether Allstate is agreeable to these terms.

(ECF No. 107-3, 11/2/2020 Velocity email, PageID.3807.) The email attached a

proposed Stipulation of Dismissal of Cross-Claims With Prejudice and Proposed

Stipulated Order. (ECF No. 107-3, Proposed Stipulation and Order, PageID.3809-

13.) The proposed Stipulation contained the /s/ electronic signatures of counsel for

Allstate and Velocity, but the date on the Stipulation was left blank. (*Id.*

PageID.3811.) Velocity explained that it created the Stipulation by taking the last

stipulation that Allstate and Velocity had submitted to the Court, revising the title

and body, leaving the signature blocks of each party's counsel untouched, but

intentionally leaving the date blank. (Velocity Resp. PageID.3902, citing ECF No.

67-2, Declaration of Krista Hosmer, ¶ 10, PageID.1811.)

Allstate argues that Velocity's email and Stipulation constituted a settlement offer and that it accepted the terms in those documents by sending an email to Velocity's counsel approximately an hour later, at 2:13 p.m., stating:

> Allstate agrees to and accepts the settlement terms and the language of the stipulation and order of dismissal as you set out below and in your attached stipulation and order, which resolves all issues and disputes in this case.

> As both parties accept and agree on all settlement terms, my office will proceed with submitting the S&O you drafted with the Court (I note that you already have the attorney signatures in there so we will just insert today's date). I believe Judge Grand will appreciate the quick notice since we presently have oral argument scheduled for November 18.

(ECF No. 107-4, 11/2/2020 Allstate email, PageID.3815.) Allstate did not hear back from Velocity's counsel but nevertheless submitted the Stipulation and Order to the Court less than three hours later that same day.

## 2. Velocity's Objection to Stipulation of Dismissal

The next day, November 3, 2020, Velocity filed Objections to the Stipulation of Dismissal of Cross-Claims With Prejudice That Was Submitted Without Its Consent. (ECF No. 55.) Velocity argued that the parties had not reached a settlement and that Allstate submitted the Stipulation and Order to the Court without Velocity's consent and before the parties had drafted their formal Settlement Agreement, which Velocity asserted was a precondition to the dismissal of the lawsuit. (*Id.*) Velocity stated that the terms of the Confidential Settlement Agreement had not been

6

negotiated, including, most importantly, the scope and language of the release provision. (*Id.*)

### 3.   Allstate's Motion to Enforce Settlement

Two days later, Allstate filed its Motion to Enforce Settlement Agreement with Velocity. (ECF No. 56, Allstate Mot.) Allstate contends that Velocity's November 2nd email with Stipulation constituted an offer of settlement which contained all of the necessary terms and resolved every issue in the case, and which Allstate accepted. Allstate claims that Velocity now refuses to go forward with the settlement after learning that Allstate had recently filed a complaint against Velocity in a separate matter alleging, *inter alia*, a RICO violation, *Allstate Insurance Company, et al. v. 411 Help, LLC, et al.*, 20-cv-12939 (E.D. Mich.) (the "411 Help litigation").

Velocity filed, under seal, a Response in opposition to Allstate's Motion, arguing that it had consistently sought a settlement that would include a release of claims beyond those related to Mercyland asserted in this interpleader action. (ECF No. 60, Velocity Resp.) Velocity contended that the November 2nd email was only submitted to Allstate for its "review and consideration" and that there has been no "meeting of the minds" on all material settlement terms of a settlement agreement. (*Id.*) Velocity further argues that even if there had been such a "meeting of the

7

minds," Allstate breached the confidentiality terms of the parties' alleged agreement by publicly disclosing the 50/50 split term in its motion to enforce. (*Id.*)

Allstate filed a reply brief in support of its motion, reasserting that the November 2nd email and Stipulation contained all essential terms for settlement, and that Allstate never agreed to consider a global release of all claims. (ECF No. 61, Allstate Reply.) Allstate further contends that Velocity breached the agreement first by refusing to go forward with the settlement. (*Id.*)

Velocity filed a sur-reply brief, with leave of the Court, reasserting that the parties did not have a "meeting of the minds" on all material settlement terms. (ECF No. 79, Velocity Sur-reply.)

### 4. Magistrate Judge Grand Denies Allstate's Motion to Enforce Settlement Agreement

On May 26, 2021, Magistrate Judge Grand held a hearing on Allstate's motion to enforce and heard oral argument from counsel for Allstate and Velocity. (ECF No. 107, Transcript of Motion Hearing 5/26/2021.)[1] At the conclusion of that hearing, Judge Grand ruled from the bench, denying Allstate's motion. (*Id.* PageID.3757-60.) He found that there is a question as to whether there was a meeting of the minds on all material terms of a settlement agreement, finding "a difference

---

[1] Judge Grand also heard oral argument at that hearing on Allstate's and Velocity's competing motions for sanctions (ECF Nos. 67, 91), which were both denied, and Velocity's motion for leave to file notice of supplemental proceedings and authorities (ECF No. 94), which was granted. (ECF No. 105, Order.)

of opinion about the clarity of [the November 2nd email] and the detail of that document and the comprehensiveness of that document and also what is missing." (*Id.* PageID.3758.) He also noted the statement in the November 2nd email contemplating entering a separate "Confidential Settlement Agreement," which he said its "an important part of the overall settlement." (*Id.* PageID.3759.) He further found a question of fact about Velocity counsel's understanding or belief that they were engaged in a "building block approach" to this settlement, in which the parties would first work on the more easily agreed aspects of the settlement before moving on to the more highly contested terms, such as the scope of the release. (*Id.* PageID.3758-59.)

The Magistrate Judge entered an Order the next day denying Allstate's motion "for the reasons set forth in detail on the record." (ECF No. 105.)

Defendant Allstate has filed objections to the Magistrate Judge's Order – which will be construed as report and recommendation for the reasons that follow – that are now before this Court for resolution. (ECF No. 107, Allstate's Obj.) Defendant Velocity filed a Response in opposition to Allstate's Objections. (ECF No. 109, Defendant Velocity's Response.) Allstate filed a reply in support of its objections (ECF No. 110, Defendant Allstate Reply), and Velocity filed, with the Court's permission, a sur-reply in opposition to Defendant Allstate's Objections (ECF No. 118, Defendant Velocity Sur-reply.)

9

Although the Court referred Allstate's motion to the Magistrate Judge for hearing and determination (ECF No. 72), Allstate correctly argues that the motion to enforce settlement agreement should have been referred for report and recommendation. Velocity does not dispute Allstate's position, and the Court agrees inasmuch as an order enforcing a settlement would be dispositive. *See* 28 U.S.C. § 636(b)(1)(B); *Fields v. AT&T Umbrella Benefit Plan No. 1*, No. 18-13259, 2020 WL 8970351, at *1 (E.D. Mich. July 31, 2020). Therefore, the Court will construe the part of the Magistrate Judge's Order denying Allstate's motion to enforce settlement agreement as a report and recommendation.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objection" in a timely manner. *Lyons v. Comm'r Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id*. (quotation marks and citation omitted). "A

10

general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). "'[B]are disagreement with the conclusions reached by the Magistrate Judge, without any effort to identify any specific errors in the Magistrate Judge's analysis that, if corrected, might warrant a different outcome, is tantamount to an outright failure to lodge objections to the R & R.'" *Arroyo v. Comm'r of Soc. Sec.*, No. 14-cv-14358, 2016 WL 424939, at *3 (E.D. Mich. Feb. 4, 2016) (quoting *Depweg v. Comm'r of Soc. Sec.*, No. 14-11705, 2015 WL 5014361, at *1 (E.D. Mich. Aug. 24, 2015) (citing *Howard v. Secretary of Health & Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)).

## III. ANALYSIS

Before the Court can enforce a settlement agreement, it must first "conclude that agreement has been reached on all material terms." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). "Whether the parties actually reached an agreement is a question of fact for the district court," *Moore v. U.S. Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010), which is governed by state contract law, *Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, 515 F. App'x 494, 498 (6th Cir. 2013) ("Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law.").

Under Michigan law, a "contract is formed upon offer and acceptance and a mutual assent or meeting of the minds on all essential terms." *Masco Cabinetry Middlefield, LLC v. Cefla N.A., Inc.*, 637 F. App'x 192, 197 (6th Cir. 2015). Determining whether there was mutual assent between the parties "is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind," *Tillman v. Macy's Inc.*, 735 F.3d 453, 459 (6th Cir. 2013), which requires consideration of the "relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent," *Innotext, Inc. v. Petra'Lex USA Inc.*, 694 F.3d 581, 589 (6th Cir. 2012); *see also Huntington Nat'l Bank v. Daniel J. Aronoff Living Trust*, 305 Mich. App. 496, 508 (2014) ("Courts judge whether there was a meeting of the minds from objective evidence.").

Defendant Allstate submitted three numbered objections to the Magistrate Judge's R&R denying Allstate's motion to enforce settlement agreement.

## A.     Objection No. 1: There is No "Minimum Length" Requirement to Form a Binding Settlement Agreement

Allstate first argues that the Magistrate Judge erred by finding that the November 2nd email was too short and therefore could not have encompassed all of the material terms of the settlement. (Allstate Obj., PageID.3792-94.) Allstate asserts that there is "no legal requirement that a settlement agreement be a certain length or

12

that it include a certain number of provisions in order to be enforceable," so long as there is a meeting of the minds as to all material issues. (*Id.* PageID.3792.)

Contrary to Allstate's objection, Judge Grand did not deny Allstate's motion to enforce because the November 2nd email was "too short." Rather, he commented on the brevity of the email – two sentences comprising five lines of text – in response to Allstate's counsel's repeated characterizations of the email as a "detailed and comprehensive explanation of the parties' settlement." (5/26/2021 Hearing Tr. PageID.3757; *see also id.* PageID.3715 ("the e-mail was very detailed"), 3717 ("This is a detailed e-mail. It was highly negotiated by counsel."), 3718 (characterizing the Stipulation as "very detailed" and "highly negotiated"), 3722 ("And if you look at the stipulation itself, it's very detailed."), 3726 ("But there is an e-mail with detailed settlement terms."), 3737 ("But when you do look at the actual facts here, a comprehensive November 2nd email that was clearly accepted by All State, a highly negotiated --).) Judge Grand stated in response to those repeated assertions by Allstate's counsel that "[t]hat e-mail, that is not a comprehensive email you previously detailed. That is not a detailed e-mail. Now, I'm not saying that it necessarily is dispositive, the fact that it is not comprehensive in my mind and not detailed. Maybe it's still sufficient to constitute an offer that can be accepted. That is not a comprehensive settlement email." (*Id.* PageID.3737-38.) Judge Grand continued that "[a] comprehensive settlement email, it would have also

had the draft settlement agreement and whatever confidentiality terms. Maybe it would have had terms about if you violate the confidentiality provisions there will be the following penalty or, you know, whatever. I don't know. But that was not a comprehensive detailed e-mail." (*Id.* PageID.3738.)

Judge Grand then found that there was not a "meeting of the minds here between the parties on what this email meant and did not mean," noting "we have a difference of opinion about the clarity of that document and the detail of that document and the comprehensiveness of that document and also what is missing." (*Id.* PageID.3758 ("Sometimes part of the objective evidence is what is not there.").) He stated that the email expressly contemplates a formal "Confidential Settlement Agreement" and "that is an important part of the overall settlement." (*Id.* PageID.3759.)

The Court further notes that the November 2nd email was sent to Allstate's counsel only for "review and consideration," and the terms of an expressly contemplated Confidential Settlement Agreement had not yet been negotiated, including the confidentiality provision and the scope and language of the release provision. The scope of a release was hotly contested by the parties before and throughout mediation, with Allstate admitting at the hearing that Velocity always wanted a global release and that Allstate was adamantly opposed to such a release. (*Id.* PageID.3721.) The scope of any release is absent from the November 2nd email,

and the Magistrate Judge noted that Velocity's counsel submitted affidavits attesting

that the release provision was "tabled" at that time and not included in the November

2nd email so that the parties could engage in a "building block" approach to

settlement as suggested by the mediator, Mr. Pozza. (*Id.* PageID.3757-58.)[2] The

Magistrate Judge noted "I do settlement conferences three or four of them every

single week for the last nine plus years. I have never seen a stip and order filed before

the documents are all signed off on. Nobody ever once has done that." (*Id.*

PageID.3736.) He stated that this also raised a question of fact as to whether there

was a meeting of the minds as to the meaning of the November 2nd email. (*Id.*)

The Court finds that the Magistrate Judge did not deny Allstate's motion to

enforce settlement agreement because the purported settlement agreement was "too

short," and Defendant Allstate's first objection is OVERRULED.

### B.     Objection No. 2: The Lack of a Formal Settlement Document Does Not Render the Settlement Unenforceable

Allstate contends in its second objection that the Magistrate Judge improperly

relied on the parties' intention to formalize their settlement through a "Confidential

Settlement Agreement" to find that there was not a meeting of the minds on all

---

[2] According to Velocity, the mediator, Mr. Pozza, had advised Velocity to first reach an agreement on the language of the Stipulation and accompanying Order regarding the "monies and the cross-claims, etc.," and only then turn their focus to finalizing the terms of the actual Confidential Settlement Agreement, including the confidentiality and release terms. (5/26/2021 Hrg. Tr. PageID.3713-14.) Allstate denies knowing about this "building block" approach to settlement. (*Id.*)

15

material terms because a draft of that document was not included with the November 2nd email. (Allstate Obj. PageID.3794.) Allstate relies on case law stating that "[w]hen parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." (*Id.* citing *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001).)

However, the Magistrate Judge did not rule that the parties' settlement agreement must be reduced to writing to be enforceable. Instead he found that the parties had not agreed on all essential terms, and that the objective acts of the parties did not reflect that an agreement had been reached. (5/26/2021 Hrg. Tr. PageID.3758-59.) The November 2nd email from Velocity to Allstate submitted the proposed Stipulation and Order for Allstate's "review and consideration," and expressly contemplated that Allstate and Velocity "would enter into a Confidential Settlement Agreement pursuant to which they would split the insurance proceeds interpleaded by AT-Law 50/50 and Allstate would discharge its Consent Judgment against Mercyland upon Allstate's receipt of its 50% share of those insurance proceeds." (11/2/2021 email, PageID.3807.) Judge Grand found that there was no meeting of the minds regarding the confidentiality provision of a settlement agreement, stating that "[w]hat is confidential are the terms, the details, the monetary split. And Velocity did not share any of those details," and that "the email that said

16

that there needs to be a confidential settlement agreement, I don't know what those terms were because it was never drafted. All State [sic] rushed to the court to have the stip and order entered before the Settlement Agreement was in hand, before the confidentiality provisions were in hand. So I don't know what the parties had in minds about confidentiality." (5/26/2021 Hrg. Tr. PageID.3748-49.) The Magistrate Judge asked Allstate's counsel twice during the hearing, "[w]hat are the terms of the confidentiality?" and Allstate's counsel did not have an answer, referring only to the "detailed" and "highly negotiated" email, stating "[t]here is no other settlement term that is out there for the parties to negotiate." (*Id.* PageID.3716-19.) The Magistrate Judge stated in his ruling that "the document All State [sic] is relying on as characterizing it as the, quote, objective evidence, it references a confidential Settlement Agreement in capital letters, formal, contemplated document that is not part of the record that apparently was never circulated, never executed." (*Id.* PageID.3759 (noting "any settlement that I ever have been a part of where there says there is going to be a confidential Settlement Agreement, that is an important part of the overall settlement."); *see also id.* PageID.3736 (noting "I have never seen a stip and order filed before the documents are all signed off on. Nobody ever once has done that.").) He thus found that there was no meeting of the minds regarding all material terms of the settlement. (*Id.* PageID.3760.)

Allstate has failed to demonstrate that this ruling was in error, and Defendant Allstate's second objection therefore is OVERRULED.

### C.   Objection No. 3: It Was Error to Refuse to Enforce the Settlement Based on Subjective Evidence of Velocity's Intent

Allstate argues that the Magistrate Judge improperly refused to enforce the purported settlement agreement based on evidence of Velocity's subjective intent that it was engaged in a "building block" approach to settlement, and that there were more terms to be negotiated, including the release. (Allstate Obj. PageID.3795-96.) Allstate notes the Magistrate Judge's statement in the hearing that a claim that a global release was possible did not make "any sense in a hundred thousand dollar dispute," asking "[w]hy in the world -- … [t]he interpleader funds – you guys reached an agreement to resolve that piece, assuming you reached a deal. They have $50 million dollars worth of other claims that are at issue. They are not going to do a global release as to $50 million dollars in exchange for a hundred thousand dollar deal. So that don't makes [sic] any sense." (*Id.* PageID.3730.)

Velocity responded that while Allstate did not want a global release, Velocity was "just as adamant that [it] did want one and that is why [they] never have been able to reach agreement." (*Id.* PageID.3730.) Velocity explained that the scope of a release was not discussed in the November 2nd email because Velocity was employing the building block approach suggested by the mediator, in which they were going to try to agree on the language of the Stipulation first. (*Id.* PageID.3731.)

18

Velocity explained that the date in the proposed Stipulation sent to Allstate for its review and consideration was intentionally left blank for this reason, indicating that no agreement had been reached, but that Allstate "exploited that mistake" and rushed to file the Stipulation. (*Id.* PageID.3733-34.)

In reaching his ruling, the Magistrate Judge did not rely alone on Velocity's stated intent regarding the "building blocks" approach, but looked at the record evidence as a whole and ruled that "it at least shows there is a question about whether there was a meeting of the minds here between the parties on what this email means and did not mean." (*Id.* PageID.3758.) As discussed above, the Magistrate Judge noted that in his practice of conducting three to four settlement conferences a week for the past nine years, he has "never seen a stip and order filed before the documents are all signed off on," characterizing Allstate's rush to file the Stipulation and Order in this case as "opportunistic." (*Id*. PageID.3730.) He stated that he "understand[s] the notion that while maybe that is subjective evidence and what All State [sic] is relying on is objective evidence, but to me it goes beyond that and it's more nuanced than that because even the so-called objective evidence on which All State [sic] is relying, as I have said, I do not -- we have a difference of opinion about the clarity of that document and the detail of that document and the comprehensiveness of that document and also what is missing." (*Id.* PageID.3758.) He noted that the November 2nd email specifically contemplated a Confidential Settlement Agreement and stated

"in light of that, in light of this issue of the affidavits from counsel and about their conversations with Mr. Posa [sic] and the building block approach, and, frankly, part of the objective evidence in my opinion is All State's [sic] rushing to the court. And I think All State [sic] even said, we were surprised. And I think that that is reflective of, yes, something was probably very unusual here that would have warranted confirmation of some sort" of the settlement. (*Id.* PageID.3759.)

The Court finds that Allstate has failed to show that the Magistrate Judge improperly denied Allstate's motion to enforce settlement agreement based on subjective evidence, and Allstate's third objection accordingly is OVERRRULED.

## IV.  CONCLUSION

For the foregoing reasons, the Court:

**(1)  OVERRULES** Defendant Allstate's Objections (ECF No. 107);

**(2) ADOPTS** Magistrate Judge Grand's May 27, 2021 Order construed as a Report and Recommendation (ECF No. 105); and

**(3) DENIES** Defendant Allstate's Motion to Enforce Settlement Agreement (ECF No. 56).

IT IS SO ORDERED.

Dated: September 8, 2021

s/Paul D. Borman
Paul D. Borman
United States District Judge

20